State v. Bradford.

---

## THE STATE v. BRADFORD, Appellant.

### Division Two, May 8, 1900

1. **Indictment: HOMICIDE: FELONIOUS PURPOSE.** The indictment in this case sufficiently charges that the homicidal act itself was done with a felonious purpose, and is in all respects sufficient.

2. **Confessions: COERCION.** The officers and other witnesses testify unequivocally that no threats were made to extort defendant's confession and no hope of reward was held out to him. Instead of extorting a confession, he was told that he didn't have to make any; that if he hadn't committed the crime he must not for the world admit it. The utmost extent that any witness went to was that

one of the guards said to defendant that if he had been dragged into this crime it would go lighter with him to confess, but if he had not committed it to confess nothing. *Held,* that the statement of the guard was no more than an expression of an opinion by one who had no authority to make it easier on the prisoner, and hence it was not a promise, and no error was committed in admitting his confession.

3. **Refusing Defendant's Instructions.** Where everything asked in defendant's instructions has already been given by the court of its own motion, it is not error to refuse defendant's instructions.

4. **Insanity:** SUFFICIENCY OF EVIDENCE. Two physicians, after an examination of a few moments, testified that defendant was insane when they examined him, but on cross-examination they admitted that they had never made insanity a subject of special study, and that the facts testified to by other witnesses as to defendant's conduct and capacity to do business up to the very time of the assassination and that he stated his conscience was greatly relieved by the confession, pointed strongly to his sanity. *Held,* that the question of defendant's insanity was properly submitted to the jury and was sufficient to support their verdict that he was sufficiently sane to know the right from the wrong of the crime he committed.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*L. L. Collins* and *S. J. Corbett* for appellant.

(1)   The confessions made by the defendant were inadmissible because they were obtained by holding out to the defendant the hope of reward, to-wit: "That it would go lighter with him through court if he could confess." State v. Brockman, 46 Mo. 566.   (2)   The statements made by defendant's co-defendants after the act were not admissible against this defendant on trial.   State v. Hilderbrand, 105 Mo. 318.   (3) The subsequent confessions made by defendant were inadmissible because it was not shown on the part of the State that duress had been removed at the time such subsequent confessions were made.   State v. Brown, 73 Mo. 631.   (4)   The

indictment is defective because it fails to charge that the homicidal act was done feloniously. State v. Herrell, 97 Mo. 108. (5) And, also, because it fails to charge that the killing was done with a felonious intent. State v. Fairlands, 121 Mo. 137.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) Even though the admissions were partly forced it is for the trial court to determine whether or not they are made with that degree of freedom which ought to permit their admission as evidence. State v. Patterson, 73 Mo. 695; State v. Kidder, 96 Mo. 548. It is for the jury to determine the weight of such evidence. State v. Brooks, 92 Mo. 542. The admissibility of confession is for the trial court and unless it be made to appear clearly that manifest error has been committed in this record such confession can not be held reversible error on appeal. State v. Conley, 12 Mo. 462; State v. Hopkirk, 84 Mo. 278. To render the confession inadmissible the motive of hope or fear must be directly applied by a third person and must be such as to overcome the mind of the defendant so as to make his statements more likely to be false than true. State v. Anderson, 96 Mo. 241. (2) The only admissions of defendant's brother and sister (his co-conspirators) that were admitted were declarations that, by reason of their proximity to the crime, were a part of the *res gestae*, or were mere matters of inducement and hence no error was committed in admitting them. State v. Walker, 78 Mo. 380; State v. Holcomb, 86 Mo. 371; State v. Hawkins, 7 Mo. 190. (3) Appellant contends that "the indictment is insufficient because it fails to charge that the act itself was done with a felonious intent." The entire act is alleged to be felonious, for the words feloniously, etc., previously alleged are connected with the mortal stroke by the words "and then and there." State

v. Herrell, 97 Mo. 108; State v. Lakey, 65 Mo. 217; State
v. Steeley, 65 Mo. 218; State v. Sides, 64 Mo. 383.

GANTT, P. J.—The defendant was jointly indicted with
William Bradford and Mattie Holt for the murder of L. T.
Holt in Pemiscot county on May 5, 1899. He was duly
arraigned and pleaded not guilty, a severance was granted,
and he was tried alone, found guilty of murder in the first de-
gree and sentenced to be hanged. He appeals to this court.

The facts are few and simple. The defendant is a
brother of Mattie Holt and his co-defendant William Brad-
ford.

For some cause not disclosed, unless as defendant stated
in one of his many confessions, Holt, the deceased, was cruel
to his wife, these three conspired to murder L. T. Holt.

Mrs. Holt and William Bradford induced defendant to
do the killing by the promise of a horse and twenty-five
dollars. Defendant was working for a neighbor, but on Mon-
day he claimed to be sick. On Friday, May 5th, his brother
William came and took his place to work. Defendant armed
himself with a single-barreled breech-loading shotgun, and
went to a spot on a private road leading from Virginia town-
ship to Braggadocia, in Pemiscot county. The road runs
through the timber, and at the point of the homicide the tim-
ber was very heavy and the ground low and marshy. Seating
himself on a log near the road the defendant awaited the com-
ing of his victim on his return that evening. About four
o'clock deceased came riding along in a walk. Defendant says
deceased saw him sitting there, but neither spoke. Just as
deceased passed him, defendant raised his gun and shot de-
ceased through the right side. The horse sprang forward in
a run and carried deceased about one hundred and fifty yards,
when the deceased fell off and the horse ran home riderless.

Seeing deceased fall, defendant reloaded his gun and
followed rapidly until he reached the prostrate form of de-

ceased, and to make sure of his work he placed the gun near the head of the dying man and blew out his brains. The defendant went home, took the main-spring out of his gun-lock and another fixture and put them in a small box and put this small box in an old rag box. Having dismantled his gun, he went to the field and held a whispered conference with William Bradford. William then informed their employer that Holt's horse had come home with the saddle bloody and they were afraid he had been killed. This neighbor and others went to the home of Bradford the defendant, and found the gun still fresh from the recent shots, and after a search found the missing parts of the lock. The neighborhood was aroused and they started to find Holt. It was a dark, stormy night, however, and the party got lost in the swamp, and went to a neighbor's and waited till morning, when they soon found the dead body. Defendant and his brother were induced to go to the place where the body lay, and the inquest was held. Their conduct and manner excited suspicion, and a warrant was procured for them and their sister, Mrs. Holt. That night after much questioning defendant voluntarily confessed the killing and stated that his brother and sister were his accomplices. He said he felt better as soon as he confessed. He had relieved his conscience. After that he had no hesitancy of telling anyone that he killed deceased, and all the circumstances. His defense was insanity.

The indictment is as follows, omitting caption:

"The grand jurors for the State of Missouri, summoned from the body of the county of Pemiscot and State of Missouri, upon their oath present and charge that Jack Bradford, late of the county of Pemiscot and State of Missouri, on the 5th day of May, 1899, at and in the county of Pemiscot and State of Missouri, in and upon one L. T. Holt, then and there being, feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, did make an assault, and with a dangerous weapon, to-wit, a shotgun, then and there loaded

with gunpowder and leaden balls, which he, the said Jack Bradford, in both his hands, then and there had and held at and against him, the said L. T. Holt, then and there feloniously, on purpose, and of his malice aforethought, willfully, deliberately and premeditatedly did shoot off, and discharge; and with the shotgun aforesaid, and the gunpowder and leaden balls, aforesaid, then and there feloniously, and on purpose, and of his malice aforethought, willfully, deliberately, and premeditatedly did shoot and strike him the said L. T. Holt, in and upon the right side of him, the said L. T. Holt, giving to him, the said L. T. Holt, then and there, with the dangerous and deadly weapon, to-wit, the shotgun aforesaid, and the gunpowder and leaden balls aforesaid, in and upon the right side of him, the said L. T. Holt, one mortal wound of the breadth of one inch, of which mortal wound, the said L. T. Holt then and there immediately and instantly died. And the grand jurors aforesaid, upon their oath aforesaid, do further present and charge that William Bradford and Mattie Holt, before the said felony and murder was committed in the manner and form aforesaid, and by the means aforesaid, at the time and place aforesaid, did then and there unlawfully, feloniously, willfully, deliberately, premeditatedly and of their malice aforethought, incite, move, procure, aid, counsel, hire and command him, the said Jack Bradford to do and commit the said felony and murder aforesaid, in the manner and form aforesaid, and by the means aforesaid, at the time and place aforesaid; and the grand jurors aforesaid, upon their oath aforesaid, do say that Jack Bradford, William Bradford and Mattie Holt, him the said L. T. Holt, at the time and place aforesaid, in the manner and by the means aforesaid, feloniously, on purpose, willfully, deliberately, premeditatedly and of their malice aforethought, did then and there kill and murder, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

State v. Bradford.

Learned counsel for defendant ask a reversal on various grounds all of which we proceed to consider.

I. The indictment is assailed because they assert that it fails to charge that the homicidal act itself was done with a felonious purpose. Reference to the indictment, however, will refute this contention. The charge is that the defendant "with the shotgun aforesaid and the gunpowder and leaden balls aforesaid, then and there feloniously and on purpose and of his malice aforethought, willfully, deliberately and premeditatedly did shoot and strike him, the said L. T. Holt in and upon the right side of him, the said L. T. Holt, giving to him, the said L. T. Holt, then and there, with the dangerous and deadly weapon, to-wit, the shotgun aforesaid, and the gunpowder and leaden balls aforesaid, in and upon the right side of him, the said L. T. Holt, one mortal wound of the breadth of one inch, of which mortal wound, the said L. T. Holt then and there immediately and instantly died."

The indictment is in all respects sufficient. [State v. Hudspeth, 150 Mo. 12; Heydon's case, 4 Coke Rep. 41a; 3 Chitty's Crim. Law, 750.]

II. The admission of defendant's various confessions is insisted to be error.

Instead of extorting a confession from defendant, he was told that he didn't have to make any; that if he hadn't committed the crime, they wouldn't have him admit it for the world. The utmost extent that any witness went to was that some one said to him, that if he had been dragged into this crime it was likely to go lighter with him, but if he didn't do it to confess to nothing, but if he had done it it was likely to go lighter with him in court. Other witnesses, especially the officers, testify unequivocally that no threats were made to extort his confession and no hope of reward held out to him.

The mere expression of one of the guard that it was likely to go lighter with him if he did confess was no more than the expression of an opinion of one who had no authority to make

it easier on the prisoner. It was no promise. [State v. Hopkirk, 84 Mo. loc. cit. 286; State v. Patterson, 73 Mo. 695.] Again and again, without the slightest coercion or duress and with no promise of clemency the defendant confessed to the killing of Holt. Clearly no error was committed in receiving his confessions in evidence.

III. The instructions are assailed but they are such as have been approved over and over again by this court. All that was asked in defendant's instructions had already been given by the court of its own motion, and when this is done it is not error to refuse to multiply instructions, but rather to be commended.

IV. The evidence as to the sanity or insanity of defendant was all submitted to the jury, and there was ample evidence to support their verdict that he was sufficiently sane to know the right from the wrong of the terrible act which he committed. It is true, two physicians after an examination of a few minutes testified that in their opinion he was insane when they examined him, but the cross-examination of these experts disclosed that neither had ever made a specialty of the subject and they were compelled to admit that the facts testified to as to defendant's conduct and capacity to do business up to the very time of the assassination, his statement that his conscience was greatly relieved after he had confessed his part in the murder, all pointed strongly to the sanity of the defendant.

The case developed a terrible condition of depravity. The cool and deliberate assassination of a man by his own brother-in-law for twenty-five dollars, and an insignificant horse, at the instigation of the murdered man's wife and her brother, adds another dark page to the history of crime. We find no error in the record and nothing to ameliorate the crime of which the jury found the defendant guilty.

The judgment is affirmed, and the sentence of the law is directed to be executed. *Sherwood* and *Burgess, JJ.*, concur.