## THE STATE v. CHARLES A. VINTON, alias J. D. HARDY, Appellant.

### Division Two, May 18, 1909.

1. **INSTRUCTION: Larceny: Good Character: No Evidence.** Where there is evidence of defendant's good character, it is error to fail to give an instruction, when requested, to the effect that the jury are to determine whether the evidence of defendant's good character is sufficient to overcome the presumption of his guilt arising from a recent possession by him of the stolen goods; but it is not error to fail to give such an instruction where there is no evidence offered by either side as to the good character and habits of life of defendant.

2. **CORPUS DELICTI: Larceny: Proof.** The *corpus delicti* in a larceny case may be established by purely circumstantial evidence; and where the evidence clearly shows that certain rings and brooches were stolen from a certain company, that they were its property, that they were missed from the store window on a certain day, that they were found seventeen days later in defendant's possession in a different city, that some of them were hidden in the mattress of his bed, that he claimed to have bought them in the city where the jewelry company did business, that they were positively identified by the company's registered mark thereon, and that defendant made conflicting and damaging statements about how they came into his possession, it cannot be said, in view of the rule of law that recent possession of stolen property is presumption of guilt, that there was a total failure to prove the *corpus delicti*.

3. ———: ———: **Salesmen as Witnesses: Explanation.** Where the jewelry was traced to defendant soon after it was missed from the store, it was not necessary for the State to introduce all the salesmen in the store for the purpose of negativing the fact that they had sold or disposed of it, but explanation should come from defendant as to how he came into possession of it.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

State v. Vinton.

*Willis H. Clark* for appellant.

There was an utter absence of proof of the *corpus delicti* of the offense with which appellant stood charged. The proven facts were not "inconsistent with any reasonable theory of the defendant's innocence" of the crime charged. Of the seven or eight salesmen who had access to and authority to sell these goods only two were placed on the stand. The evidence did not exclude the hypothesis that the goods might have been sold by some salesman and the sale report omitted either inadvertently or with criminal intent, or that the goods had been sent out on approval of some prospective customer, or had been taken back to the manufacturing part of the establishment for alterations or repairs, or that they might have been appropriated by some employee having access and opportunity to take them, either rightfully or wrongfully, in which case the crime committed, if any, would be that of larceny or embezzlement of the goods or their proceeds by such employee. The evidence left all these matters in the realm of conjecture, hence it did not exclude every other hypothesis except that of the guilt of appellant of the offense charged against him. If the goods had been sold they were certainly not stolen from the complainant, no matter if some salesman or employee did steal or embezzle the proceeds. Perhaps they might have been sent out on approval by some salesman who did not care to incur censure until he could either return the goods or turn in their purchase price. In either of these cases the possession of the goods by appellant would be innocent so far as this charge is concerned. Not only is the evidence subject to the above criticism, but it is also open to the objection that in and of itself it tends affirmatively to show that the offense charged against appellant could not have been committed by him. Mr. Bolland, president of the complaining company, testified read-

ily to the arrangement of the show window, diamond room and store room with reference to such contingencies and stated frankly that the very purpose of it was to make theft by outsiders impossible, a result which he believed had been accomplished. He also stated that their first investigation led to the conclusion that the goods must have been taken by some salesman or employee, and that it was reported to the police authorities as such, because it was thought impossible that any other person could have reached the goods. The evidence attempting to fasten upon appellant the alleged "possession" of some of the articles is ludicrous as exemplifying current police methods. The police officer, in appellant's absence, obtains from persons who had means and opportunity for entrance to appellant's room, the key to the room and himself effects an entrance, whereupon he proceeds to "discover" some of the property concealed in the room. Such discoveries have received the attention of the courts in this State in previous instances. State v. Wilks, 58 Mo. App. 159; State v. Castor, 93 Mo. 242. Not satisfied with this exploit, he "confronts" appellant with a pawnbroker and was permitted to narrate to the jury his hearsay testimony as to an alleged statement made by the pawnbroker. Possibly neither this Cleveland policeman nor the trial court had ever heard of the decisions of this court upon such matters. State v. Foley, 144 Mo. 600. And the crowning achievement of all was the comedy enacted at police headquarters in Cleveland, in order to fix upon appellant the "possession" of the goods. The police officials solemnly and soberly handed the brooch to the pawnbroker, who in turn handed it to appellant, who in turn "redeemed" it with his own money, kindly loaned him by the police for that purpose, and then "voluntarily" surrendered it to the police officials. In like manner was the ring traced to the "possession" of appellant, being discovered upon his finger in some

mysterious way some time after his arrest and while he was incarcerated *"incommunicado"* in the police headquarters at Cleveland.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1) (a) The testimony of John F. Bolland relative to the register was competent. And the objection to it was also met by the subsequent introduction of the register itself. The identification of the jewelry by Bolland and the salesmen was not error. State v. Dale, 141 Mo. 288; State v. Babb, 76 Mo. 504. It was not error to permit the secret numbers on the jewelry to be read to the jury. Evidence of the marks was admissible without producing the articles at all. State v. Moore, 52 La. Ann. 608; State v. Kiger, 116 N. C. 750. The numbers were not discernible by the eye unaided. They were not easily distinguishable with a glass. The jury were properly permitted to examine the articles by the aid of a magnifying glass. Short v. State, 63 Ind. 380. Under the circumstances the skilled jeweler with a glass adapted to his own eye served in the capacity of an interpreter of the secret numbers which were practically invisible to the jury. The evidence was not secondary, and the jury had the articles before them. Physical facts are convincing evidence. State v. Crow, 107 Mo. 350; Spittorf v. State, 108 Ind. 172. (b) The jewel register was competent to the exent to which it was admitted. It was shown to have been made at the time the various articles were numbered. The correspondence between the numbers on the jewelry and the numbers on the jewel register was proper matter of identification, and the register was admitted no further than to show that correspondence. The numbers were shown to have been entered long prior to the theft. (c) The letter addressed to J. D. Hardy found upon defendant when he was arrested was competent under the information as tend-

ing to show that he was receiving mail under an assumed name. He was occupying a room at the American Hotel under the same *alias*. (2) (a) Substantial evidence is all that is required to sustain the verdict. This court will not undertake to try questions of fact *de novo*. State v. Miller, 188 Mo. 379; State v. McGee, 188 Mo. 409; State v. Smith, 190 Mo. 723. (b) The *corpus delicti* may be proved by circumstantial evidence. State v. Rodman, 62 Iowa 459; Colquitt v. State, 61 Ala. 52; Martin v. State, 125 Ala. 70; 1 McLain's Crim. Law, par. 612; 25 Cyc. 120; Territory v. Doyle, 7 Mont. 250; Roberts v. State, 61 Ala. 406. (c) The taking was also proved. The most usual and cogent proof of the caption and asportation of the property consists in proof of the prisoner's possession of the stolen goods. That proof is here. Price v. Com., 21 Gratt. 865; Duckett v. State, 65 Ga. 369. (d) The non-consent of the owner may be shown by circumstantial evidence. People v. Jacks, 76 Mich. 221; Wilson v. State, 12 Tex. App. 487; Wiegriefe v. State, 66 Neb. 26; State v. Osborne, 28 Iowa 11. Search is cogent evidence of non-consent. Rains v. State, 7 Tex. App. 590. (e) The ownership and identification of the property was amply sufficient when measured by cases justly affirmed by this court. State v. Soper, 207 Mo. 505; State v. Donovan, 121 Mo. 500. (f) Defendant's possession of the jewelry as shown by the evidence, under the circumstances of this case, was sufficient to warrant a verdict of guilty. State v. Kelly, 73 Mo. 616; State v. Owsley, 111 Mo. 454; State v. Babb, 76 Mo. 503; State v Lange, 59 Mo. 419. Defendant being found in possession of the jewelry and offering no explanation of that possession, the presumption of guilt became conclusive. State v. Kelly, 73 Mo. 614. The fact that defendant was apprehended in another State did not destroy the presumption of guilt arising from his possession of the jewelry. Merely crossing a State line does not de-

State v. Vinton.

stroy a rule of evidence based upon human nature. State v. Kinsman, 7 Rich. (S. C.) 503; McGuire v. State, 6 Baxt. (Tenn.) 623. The question of the recency of the possession sufficient to raise a presumption of guilt depends on all the facts and circumstances. State v. Bruin, 34 Mo. 541; State v. Floyd, 15 Mo. 356; Price v. Com., 21 Gratt. 866. The lapse of time impairs the strength of the presumption arising from possession by reason of the fact that memory is not infallible and the circumstances attending the acquisition of the property, the source from which it was acquired, etc., may escape the memory. Consequently the mere lapse of time may obviate the necessity of an explanation of possession. But in this case the defendant claimed to have bought the goods at the World's Fair, some years before. The falsity of this statement leaves but a question of identity, and, when it is established, the presumption from possession attaches without regard to lapse of time between the taking and the discovery of the goods in defendant's keeping. Queen v. Evans, 2 Cox. C. C. 270. In the following cases the presumption from recent possession was applied on evidence less conclusive than that in the case at bar. And the time elapsed since the taking had been greater in some instances: State v. Wright, 199 Mo. 163; State v. Crank, 75 Mo. 406; State v. Gebey, 196 Mo. 106; State v. Estes & Johnson, 209 Mo. 303; State v. Reed, 122 Mo. App. 367; State v. Yates, 159 Mo. 526.

FOX, J.—This cause is now presented to this court upon appeal by the defendant from a judgment of the circuit court of the city of St. Louis, convicting him of grand larceny.

On March 16, 1907, the circuit attorney filed in the circuit court of the city of St. Louis an information, duly verified, charging defendant with grand larceny. The stolen property consisted of jewelry of the

value of fifteen hundred dollars, and was alleged to be the property of J. Bolland Jewelry Company, a corporation. The defendant was duly arraigned and entered his plea of not guilty. On March 22, 1907, this cause was continued to the next term of court; however, on April 15, 1907, both parties announcing ready for trial, a jury was impaneled and sworn and the trial of the cause proceeded. The facts developed upon the trial of this cause were substantially as follows:

The three rings and two brooches charged in the information to have been stolen by defendant were shown by the evidence to have been the property of the J. Bolland Jewelry Company, a corporation, whose place of business was at 513 Locust street, St. Louis, Missouri. The rings and brooches in evidence were identified quite positively by the witnesses on inspection and by means of secret marks registered by the company. The register was in evidence. The total value of the jewelry alleged to have been stolen by defendant was fifteen hundred and seventy-two dollars. The pieces comprising the lot were severally valued by the witnesses at sums ranging from about one hundred and twenty-five to nearly four hundred dollars. The jewelry in evidence was shown to have been part of the J. Bolland Jewelry Company's window display in February, 1907, and the two brooches and the diamond ring were placed in the window on the morning of February 23, 1907, by the witness Lindsley. At 6 p. m. of that day, when the jewelry used in dressing the window was removed therefrom, these three articles were missing. The two other missing rings seem not to have been in the show window on that day. Search was instituted immediately upon discovery of the loss, but the articles were not found. It was at first suspected that some employee had abstracted the jewelry in question, but that suspicion never took the direction of any particular person.

On March 12, 1907, seventeen days after the loss of the jewelry by the Bolland Company of St. Louis, defendant was arrested in Cleveland, Ohio. He was wearing the ring set with rubies and diamonds when arrested. Defendant at first denied having any of the other jewels, but being confronted with one Miller, a pawnbroker, he admitted pawning the diamond brooch at Miller's establishment in Cleveland, and repaid him twenty-five dollars of the loan, thereby recovering the brooch. Defendant had secured thirty dollars from Miller  He, also, first denied that he was staying at the "American House" in Cleveland, but finally admitted that the contrary was true. A search of his room there had already been made, resulting in the discovery and reclamation of the diamond and pearl-studded brooch. After these occurrences, defendant laid claim to the jewelry, saying he had bought it at the World's fair from one Collins or Collors, and that it belonged to his wife. He added, however, that he now had it and was going to dispose of it. After his arrest he explained placing the pearl brooch between the mattresses in his room by saying it was safer there, and that he might have lost it. Defendant claimed to have been keeping the jewelry prior to visiting Cleveland in a safe deposit vault in St. Louis. When arrested defendant was using as an *alias* the name of J. D. Hardy.

There was no testimony offered on the part of the defendant, but at the close of the State's case defendant requested the court to give an instruction, in the nature of a demurrer to the evidence, that the jury be directed to return a verdict of not guilty. This request was refused, to which action of the court defendant preserved his exceptions.

The court fully instructed the jury upon every phase of the case to which the testimony was applicable. It is not essential that the instructions be

reproduced.    We will give them such attention as may be required during the course of the opinion. The defendant preserved exceptions to the giving of instructions by the court; however, he asked no specific instructions, except the demurrer heretofore referred to, neither did he indicate the particular matters on which he desired additional instructions given.

The cause being submitted to the jury upon the evidence and instructions of the court they returned a verdict finding the defendant guilty as charged, fixing his punishment at imprisonment in the penitentiary for a term of two years. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Sentence and judgment were entered of record in accordance with the verdict    and from this judgment defendant prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

### I.

The record in this cause discloses numerous assignments of error; however. the brief and argument of learned counsel for appellant is confined principally to the discussion of the question presented as to whether or not there was any proof of the *corpus delicti* of the offense with which appellant stands charged.

We have carefully considered in detail the disclosures of the record and have analyzed all of the evidence.    The record discloses numerous objections to the admission of evidence offered by the State, and it is sufficient to say regarding the action of the court in its rulings upon such objections    that    we    have carefully considered the testimony offered, as well as the objections interposed by the defendant, and in

our opinion there was no substantial error committed by the court, none at least affecting the substantial rights of the defendant respecting a fair and impartial trial.

## II.

This brings us to the consideration of the instructions given by the court. We have carefully examined in detail all of the instructions submitted to the jury, and in our opinion they fully cover every phase of the case to which the testimony was applicable. While counsel for appellant properly preserved exceptions to the giving of all instructions by the court, yet in his brief and argument he does not undertake to criticise or point out any errors in the instructions as given. It may be said that it was error to omit the qualification in instruction number 2, in reference to good character as one of the elements for the consideration of the jury in passing upon the question as to whether or not such evidence of good character was sufficient to overcome the presumption of guilt by reason of the recent possession of the stolen articles. But as applicable to the facts in this case there was no error in giving the instruction in the form as presented by the court, for the reason that there was no evidence offered by the defendant or the State as to the good character or habits of life of the defendant.

There is no merit in the assignment of error that the court failed to cover all the law by its instructions. There is an entire absence from this record of any suggestions on the part of the defendant to the court as to any subject upon which an instruction was desired; but as before stated, the instructions of the court fully covered every theory of this case to which the testimony had any application.

### III.

This leads us to the consideration of the proposition so earnestly and ably presented by counsel for appellant that there is an entire absence of any proof of the *corpus delicti.*

We are unable to give our assent to the insistence of appellant that there was no proof of the body of this crime. It is well settled that the *corpus delicti* may be established by purely circumstantial evidence. In 25 Cyc. 120, in the text, it is expressly stated that the *corpus delicti* may be established by purely circumstantial evidence. There are numerous cases cited supporting the announcement of the rule in the text. [State v. Rodman, 62 Iowa 1. c. 459; Colquitt v. State, 61 Ala. 1. c. 52; Martin v. State, 125 Ala. 1. c. 70; McLain's Crim. Law, par. 612; 25 Cyc. 120; Territory v. Doyle, 7 Mont. 1. c. 249, 250; Roberts and Williams v. State, 61 Ala. 405, 406.]

The testimony in this case shows beyond all controversy that the property designated in the information was stolen from the J. Bolland Jewelry Company, a corporation, doing business in the city of St. Louis. The testimony clearly shows that the jewelry as described in the information was the property of the J. Bolland Jewelry Company, and that these articles were missed from the store, which was located at 513 Locust street, St. Louis, Missouri, on February 23, 1907. Careful search was made for the missing articles but they could not be found. The matter was then referred to the police department for investigation, and on March 12, 1907, in the city of Cleveland, Ohio, seventeen days after the articles were missed from the store of the jewelry company, the defendant was arrested and when arrested had in his possession and was wearing one of the rings that was missed from the store of the jewelry company. In his room at the hotel in Cleveland, Ohio, one of the brooches

charged to have been stolen was found concealed between the mattresses of the bed; another one of the brooches he had pawned at a broker's shop. It was also shown that he was going under an assumed name and made false and conflicting statements regarding himself, his name, the jewelry and other matters. He claimed to have gotten possession of the jewelry in St. Louis; to have bought it there and to have had it in a safe deposit vault. The defendant also claimed in conversation with some of the witnesses that he had bought this jewelry at the World's Fair, and that it belonged to his wife. Each of the articles of jewelry traced to the possession of the defendant in Cleveland, Ohio, was fully identified as being the property of the J. Bolland Jewelry Company. On the part of the defendant there was no testimony whatever, either by himself or other witnesses, explanatory of his possession of the articles charged to have been stolen. The testimony offered by the State as to the identification and value of the jewelry was competent and entirely satisfactory. Upon that state of facts we have the well-settled rule of law applicable to the presumption of guilt springing from recent possession of stolen property. The rule applicable to this presumption has been well settled by numerous writers upon circumstantial evidence. It is said: "Since the desire of dishonest gain is the impelling motive to theft and robbery, it naturally follows that the possession of the fruits of crime, recently after it has been committed, affords a strong and reasonable ground for the presumption that the party in whose possession they are found, was the real offender, unless he can account for such possession in some way consistently with his innocence. The force of this presumption has been recognized from the earliest times; and it is founded on the obvious consideration, that if the possession had been lawfully acquired, the party would be able, at least shortly after its acquisition, to give an account of

the manner in which it was obtained; and his unwill-
ingness or inability to afford such explanation is
justly regarded as amounting to strong self-condemn-
atory evidence.'' [Wills, Circ. Ev., sec. 4, p. 68; 2
Best on Ev., sec. 321.]

Mr. Burrill on Circumstantial Evidence, page 446,
announced the rule ''that the possession of property
which has been recently stolen raises such a presump-
tion of guilt against the possessor as to throw on him
the burden of showing how he came by it, or that he
came honestly by it; and, in the event of his failing to
do so, to warrant the final inference or conclusive pre-
sumption of his being the real offender.''

Along the same line Best on Evidence, sec. 211,
states the rule in this language: ''Not only is this
presumptive evidence of delinquency when coupled
with other circumstances, but, even when standing
alone, it will in many cases raise a presumption of
guilt, sufficient to cast on the accused the *onus* of show-
ing that he came honestly by the stolen property; and
in default of his so doing, it will warrant the jury in
convicting him as the thief.''

The rule above as announced by the text-writers
has by a long line of decisions met with the approval
of this court, and instructions embracing the prin-
ciples announced by the text-writers have uniformly
been approved by this court. [State v. James, 194 Mo.
268; State v. Barker, 64 Mo. 282; State v. Owens, 79
Mo. 619; State v. Sidney, 74 Mo. 390; State v. Kelly,
73 Mo. l. c. 614-616:]

We have not reached that stage in the administra-
tion of the criminal laws of this State to require posi-
tive proof by some eye-witness that the property was
taken, and as applicable to the facts in this case, we
are unable to conceive of more convincing proof that
a larceny had been committed and that defendant was
guilty of such larceny, when it was shown that the ar-
ticles of jewelry left the store of the jewelry company

without the consent of the owners and recently thereafter are found in the possession of the defendant, who was going under an assumed name, and who failed to introduce any proof of any character which in any way tended to rebut the presumption of guilt arising from such recent possession. It was not essential, as is very aptly stated by the learned Attorney-General, to require a resolution of the board of directors of the J. Bolland Jewelry Company to show that it did not consent to the taking or disposition of these articles of jewelry.

Appellant complains that a number of salesmen of the jewelry company were not introduced as witnesses to explain what connection they had with the disposition of the articles of jewelry involved in this proceeding. It is a sufficient answer to that complaint to say that when the jewelry was traced to the possession of the defendant explanation should come from him as to how he came into possession of the property, and it was by no means essential to introduce all of the salesmen connected with the jewelry company for the purpose of negativing the fact that they had sold or disposed of the property to anyone. When the property was found in the possession of the defendant explanation as to his possession rested upon him. It was expressly ruled in Roberts and Williams v. State, 61 Ala. 1. c. 406, that as a legal proposition it was not necessary that the State should have introduced all the clerks in the store and proved by them severally that they did not sell the. articles charged to have been stolen.

The ownership and identification of the property were clearly shown by the evidence introduced by the State, and that this property was stolen, under the disclosures of the record. in this cause, is too plain for discussion, and as was said in State v. Kelly, supra, "the possession of property which has been recently stolen raises such a presumption of guilt against the

possessor as to throw on him the burden of showing how he came by it, or if he came honestly by it.''

## IV.

We have carefully read in detail all the evidence as disclosed by the record, and have carefully considered all the complaints of the appellant directed to the action of the trial court during the progress of the trial, and are unable to discover any substantial error upon the record before us. If the uniform rulings of this court concerning the presumption arising from the recent possession of stolen property are to be longer followed, then we see no escape from the conclusion that the jury were fully warranted in finding the defendant guilty of the larceny charged.

Entertaining these views the judgment of the trial court should be affirmed, and it is so ordered.

All concur.