STATE, Respondent, *v.* DIXSON, Appellant.

(No. 6,162.)

(Submitted September 13, 1927.   Decided October 13, 1927.)

[260 Pac. 138.]

*Criminal Law — Burglary — Confessions — Husband and Wife —Privileged Communications—Evidence—Instructions—Corpus Delicti—Trial—Improper Remarks of Trial Judge—Appeal and Error—Record on Appeal—Redundant Matter—Duty of Judge in Certifying.*

Burglary—Corpus Delicti may be Proven by Circumstantial Evidence.
1.  *Held,* that the corpus delicti in all criminal prosecutions (except in cases of homicide, sec. 10962, Rev. Codes 1921) need not be established by direct and positive proof but may be proven by circumstantial evidence, and that in the instant case (burglary) it was so proven, the fact that there was no evidence to show how the entry was made being immaterial.

Same—Confessions—Admissibility in Evidence—Question in First Instance for Trial Court—Appeal.
2.  The question whether an alleged confession of one charged with crime made while in custody was voluntarily made depends largely upon the particular facts in each case, its admissibility in evidence is a matter for the trial court's determination in the

---

1.  Confession as circumstantial evidence, see notes in 40 A. L. R. 571.
2.  See 1 R. C. L. 577.

first instance and its finding thereon will not be disturbed on appeal unless clearly against the weight of the evidence.

Same—Confessions—Inducements—Test.

3. The test to be applied in determining whether a confession of one on trial for crime, made while in custody, and asserted to have been made under inducement is: Was the inducement held out to the accused such as that there is any fair risk of a false confession?

Same—Confessions—Inducements—What Insufficient to Render Confession Inadmissible in Evidence.

4. *Held* that statements made by officers to defendant while in custody that "if a person told the truth, as a rule he got out of it a whole lot easier than he would by telling a lot of lies," and that "if he would come clean, chances are it would be easier with him," unaccompanied by intimidation, threats or promises, were not such inducements as to render the subsequent confession inadmissible in evidence, under the above test (par. 3), especially where defendant, accused of burglary, advised the officers where the articles taken could be found and they were found at the places indicated.

Same—Identification of Stolen Articles—Evidence.

5. The identity of articles recently missing and apparently stolen need not be positively proven by direct testimony, it being competent for a witness to give his best judgment and belief in that behalf.

Same—Husband and Wife—Annulment of Marriage of Defendant and Wife—Judgment-roll—Admissibility in Evidence.

6. Where after the commission of burglary the marriage between defendant and his wife was annulled, the latter becoming a witness for the state thereafter, the judgment-roll in the annulment proceeding, *held*, to have been properly admitted in evidence for the purpose of showing jurisdiction.

Same—Husband and Wife—What are not Privileged Communications—Admission of So-called "Communication" Held Nonprejudicial Under Facts of Case.

7. Section 10536, Revised Codes 1921, provides that neither husband nor wife, during marriage or after, can testify, without the consent of the other, to any communication by one to the other during the marriage. The marriage between defendant, charged with burglary, and his wife was annulled after commission of the offense and before trial. Before annulment defendant sent her some of the articles of jewelry stolen, as a Christmas gift, inclosing a card bearing the words "May from Bernard." The wife was permitted to testify for the state that she received the articles and card. *Held*, that her testimony as to the receipt of the articles was not a communication within the meaning of the statute, and that as to the card, considering it as a communication, its admission was nonprejudicial under the facts in the case.

Same—Stolen Articles—Information Imparted by Defendant as to Place Where Hidden Admissible in Evidence.

8. Officers may testify to information imparted to them by defendant on trial for burglary, as to where articles stolen may be found, regardless of whether or not the confession by way of which the information was obtained was voluntary and admissible.

---

3. See 1 R. C. L. 555,

[80 Mont. 181.]

Same.

9. Testimony given by witnesses for the state in a prosecution for burglary as to what the owner of the business place burglarized did on the morning of the discovery of the crime by way of hunting for missing articles and making a list of them for the officers, and, he having died prior to the trial, his declarations made at the time, were admissible.

Same—Want of Consent of Owner of Property Stolen Provable by Circumstantial Evidence.

10. Want of consent by the owner of articles to their taking by defendant charged with their larceny may generally be proven by circumstantial evidence, and always where the owner has died before trial.

Same—Value of Property Taken Need not be Proven by State.

11. In a prosecution for burglary, under a charge that defendant feloniously entered the building in question with intent to commit larceny therein, the state was not required to prove the value of the articles taken therefrom; but where the articles taken consisted of gold watches, fountain pens, etc., introduced at the trial as exhibits, the jury must be held to have been sufficiently advised that they had some value.

Same—Failure of Verdict to State Value of Property Taken not ˙Fatal Defect.

12. Where the fact that all of the articles taken by one charged with burglary were found and restored to the owner was before the jury, failure of the verdict to declare the value of the property taken and the amount restored, if any, and the value thereof, as required by section 12026, Revised Codes 1921, the section closing with the words that "the jury's failure to do so does not affect the validity of their verdict," was not a fatal defect, if the provisions of the section be to guide the jury in fixing punishment.

Same—Conduct of Defendant After Commission of Offense—Evidence—Admissibility.

13. Admission of testimony that soon after the commission of the offense charged defendant threatened to shoot himself was admissible as relating to recent subsequent conduct and as showing his state of mind.

Same—Degree of Crime—Nonprejudicial Instruction.

14. Where all the evidence in a prosecution for burglary showed that the crime was committed in the night-time, an instruction that the jury should find defendant either guilty of burglary in the first degree or not guilty was nonprejudicial.

Same—Exclusive Possession of Stolen Articles—When Instruction Properly Refused as Inapplicable.

15. Where the articles taken by defendant charged with burglary were found in a closet of a room occupied by him and his brother in their home, upon information imparted by defendant to the officers but the evidence showed that he (defendant) was the only member of the family who knew of their presence there, an instruction relating to their exclusive possession by the accused was properly refused as inapplicable.

Same—Corpus Delicti—How Provable—Improper Instruction.

16. *Held,* that an offered instruction that the corpus delicti must be proven beyond a reasonable doubt was properly refused as an incorrect statement of the law; that while the corpus delicti must be proven independently of any confession by defendant, in case of a crime other than homicide, only substantial evidence of it

is required, and that where there is substantial independent evidence, followed by evidence of confession by accused, the confession may be considered with such independent evidence in deciding whether or not, upon the whole case, the corpus delicti and the commission of the crime by the accused are proven beyond a reasonable doubt.

Criminal Law—Trial—Improper Remarks by Trial Judge Curable by Cautionary Instruction.
　17. While not subscribing to the doctrine that only objectionable remarks addressed to the jury and not those addressed to counsel during the trial in the presence of the jury may be considered prejudicial, where the court after each of such remarks cautions the jury to disregard them in arriving at their verdict, the error will be deemed cured except in instances of gross impropriety.

Same—Nonprejudicial Error Insufficient to Warrant Reversal of Judgment.
　18. In criminal cases no judgment will be reversed for technical errors or defects which do not affect the substantial rights of the defendant, and where the record is sufficient to establish the guilt of the defendant, a new trial will not be granted, even though there was error, unless it clearly appears that the error complained of actually prejudiced the defendant in his right to a fair trial.

Appeal and Error—Record—Useless and Irrelevant Matter to be Eliminated by Trial Court Before Certifying to Correctness.
　19. Before certifying to the correctness of a record on appeal the district judge should eliminate all useless and irrelevant matter, such as colloquys between counsel, and counsel and court, lengthy arguments of counsel, admonitions of court to jury at recess, etc.

[1] Burglary, 9 C. J., sec. 5, p. 1010, n. 15; sec. 60, p. 1036, n. 32; sec. 132, p. 1074, n. 7. Criminal Law, 16 C. J., sec. 49, p. 81, n. 63; sec. 1247, p. 629, n. 20, 21; sec. 1464, p. 715, n. 2, 9; sec. 1468, p. 717, n. 39, p. 718, n. 42; sec. 1509, p. 733, n. 88; sec. 1579, p. 772, n. 27; sec. 1580, p. 772, n. 31. Homicide, 30 C. J., sec. 529, p. 285, n. 42. Indictments and Informations, 31 C. J., sec. 300, p. 745, n. 96; sec. 304, p. 747, n. 24; sec. 306, p. 749, n. 45.
[2] Criminal Law, 16 C. J., sec. 1468, p. 718, n. 42; sec. 1513, p. 735, n. 34; sec. 2287, p. 926, n. 67. 17 C. J., sec. 3582, p. 242, n. 51.
[3] Criminal Law, 16 C. J., sec. 1488, p. 726, n. 48.
[4] Burglary, 9 C. J., sec. 150, p. 1084, n. 93. Criminal Law, 16 C. J., sec. 1473, p. 719, n. 53, 54; sec. 1476, p. 721, n. 85, 88; sec. 1512, p. 734, n. 20. 17 C. J., sec. 3549, p. 205, n. 25.
[5] Burglary, 9 C. J., sec. 127, p. 1071, n. 77, 78; sec. 141, p. 1081, n. 67; sec. 150, p. 1085, n. 98.
[6] Criminal Law, 16 C. J., sec. 1090, p. 562, n. 7; sec. 1521, p. 740, n. 5, 6.
[7] Criminal Law, 17 C. J., sec. 3664, p. 321, n. 47. Witnesses, 40 Cyc., p. 2223, n. 23 New, p. 2353, n. 4.
[8] Criminal Law, 16 C. J., sec. 1506, p. 731, n. 47, 55. Witnesses, 40 Cyc., p. 2355, n. 16.
[9] Burglary, 9 C. J., sec. 127, p. 1071, n. 78. Criminal Law, 16 C. J., sec. 1119, p. 577, n. 85; sec. 1120, p. 579, n. 94.
[10] Burglary, 9 C. J., sec. 134, p. 1077, n. 39, 41.
[11] Burglary, 9 C. J., sec. 55, p. 1032, n. 4; sec. 132, p. 1074, n. 7, p. 1075, n. 9. Criminal Law, 16 C. J., sec. 949, p. 512, n. 57.
[12] Burglary, 9 C. J., sec. 155, p. 1092, n. 69 New. Criminal Law, 16 C. J., sec. 1072, p. 554, n. 92 New. 17 C. J., sec. 3681, p. 335, n. 13.
[13] Criminal Law, 17 C. J., sec. 3662, p. 317, n. 10; sec. 3679, p. 333, n. 95; sec. 3688, p. 339, n. 64; sec. 3706, p. 349, n. 93.

*Appeal from District Court, Stillwater County; H. J. Miller, Judge.*

BERNARD DIXSON was convicted of first degree burglary and appeals from the judgment and the order denying his motion for a new trial.    Affirmed.

*Messrs. O'Connor & Miller* and *Mr. W. L. Parcells,* for Appellant, submitted a brief; *Mr. James F. O'Connor* argued the cause orally.

The corpus delicti must be proven before evidence connecting defendant with crime can be competent.

"The corpus delicti involves the elements of crime, and in order to prove it, all the elements of crime must be made to appear before anything the defendant may have said tending to connect him with such crime can be given in evidence." (*People* v. *Grill,* 3 Cal. App. 514, 86 Pac. 613; *People* v. *Simonsen,* 107 Cal. 345, 40 Pac. 440; *People* v. *Jones,* 31 Cal. 566; *People* v. *Thrall,* 50 Cal. 415; *People* v. *Ward,* 145 Cal. 736, 79 Pac. 448; *Choate* v. *State,* 12 Okl. Cr. 560, 160 Pac. 34; *People* v. *DeMartini,* 50 Cal. App. 109, 194 Pac. 506; *Frazier* v. *United States,* 2 Okl. Cr. 657, 103 Pac. 373; *Sullivan* v. *State,* 58 Neb. 796, 79 N. W. 721; *People* v. *Kirby,* 223 Mich. 440, 194 N. W. 142; *Ashby* v. *State,* 124 Tenn. 684, 139 S. W. 872; *State* v. *Keeland,* 39 Mont. 506, 104 Pac. 513; *Gray* v. *Commonwealth,* 101 Pa. St. 380, 47 Am. Rep. 733.)

Likewise, it is the established rule that confessions, or extrajudicial admissions of a defendant charged with crime, cannot be considered for the purpose of showing the corpus delicti or of proving the elements necessary to constitute the crime with

[14]    Criminal Law, 16 **C. J.,** sec. 2452, p. 1024, n. 86.
[15]    Burglary, 9 **C. J.,** sec. 153, p. 1089, n. 44.  Criminal Law, 16 **C. J.,** sec. 2485, p. 1045, n. 39.
[16]    Criminal Law, 16 **C. J.,** sec. 1579, p. 772, n. 27, 28, 30 New.
[17]    Criminal Law, 16 **C. J.,** sec. 2094, p. 828, n. 27; sec. 2103, p. 833, n. 94.  17 **C. J.,** sec. 3637, p. 296, n. 99, p. 297, n. 18 New.
[18]    Criminal Law, 16 **C. J.,** sec. 2622, p. 1122, n. 68.  17 **C. J.,** sec. 3560, p. 214, n. 31, p. 215, n. 32.

which he is charged. (16 C. J., 736, and cases cited; *People v. Rowland,* 12 Cal. App. 6, 106 Pac. 428; *People* v. *Frank,* 2 Cal. App. 283, 83 Pac. 578; *People* v. *Carlson,* 8 Cal. App. 730, 97 Pac. 827; *People* v. *Vertrees,* 169 Cal. 404, 146 Pac. 890.)

"Evidence that, the day after the burglary, defendant had in his possession groceries of a like kind and character to those stolen from the prosecuting witness, but which were not otherwise identified, and were goods similar to those handled by merchants generally, that they were not concealed, and a good portion of them had been used, will not sustain a conviction for burglary." (*Green* v. *State* (Tex.), 31 S. W. 386; see, also, *Bailey* v. *State,* 52 Ind. 462, 21 Am. Rep. 182; *Sanders* v. *State,* 167 Ala. 85, 28 L. R. A. (n. s.) 536, 52 South. 417; *State* v. *Beard,* 34 S. D. 76, 147 N. W. 69.) "Where guilt of burglary depends upon possession of property stolen, the identity of the goods with those stolen must be established beyond a reasonable doubt. Evidence of possession of stolen goods by defendant will not support a conviction for burglary unless the breaking and entry are clearly shown." (9 C. J., 1081, and cases cited; 4 R. C. L. 440, sec. 34; *State* v. *Sullivan,* 34 Idaho, 68, 17 A. L. R. 902, 199 Pac. 647.) It has been "held that evidence showing that stolen goods were found in a house occupied by the mother of a minor, and in which he resided as a member of her family, or in the possession of his sister, did not warrant a charge based on the hypothesis that he had individual and exclusive possession of the stolen goods. (*Sparks* v. *State,* 111 Ga. 830, 35 S. E. 654; note, *State* v. *Drew,* 101 Am. St. Rep. 482.)

It is the universal rule of law that a confession made under expectation of favor or leniency from the prosecution is inadmissible. (*Bubster* v. *State,* 33 Neb. 663, 50 N. W. 953; *Harvey* v. *State* (Miss.), 20 South. 837; *Bullen* v. *State,* 156 Ark. 148, 245 S. W. 493; *Commonwealth* v. *Knapp,* 9 Pick. (N. Y.) 496, 20 Am. Dec. 491; *People* v. *Phillips,* 42 N. Y. 200; *People* v. *Ward,* 15 Wend. (N. Y.) 231; *People* v. *Heide,*

302 Ill. 624, 135 N. E. 77; *Bram* v. *United States,* 168 U. S. 532, 42 L. Ed. 568, 18 Sup. Ct. Rep. 183.)

Instances where statements have been held to amount to inducements and confessions held inadmissible: "If you are guilty, you had better own it." (*State* v. *York,* 37 N. H. 175.) "It would be better for you, Harry, to tell the whole thing." (*State* v. *Wintzingerode,* 9 Or. 153.) "It would be better for him to make a full disclosure." (Uttered by someone in the presence of the sheriff.) (*People* v. *Barrie,* 49 Cal. 342.) "Jimmie, they are not going to let you out on such stuff as this." (*Collins* v. *Commonwealth,* 15 Ky. Law Rep. 691, 25 S. W. 744.) "I don't think the truth would hurt anybody; but it would be better for you to come out and tell all you know about it if you feel that way." (Sheriff in charge to boy eighteen years old.) (*People* v. *Thompson,* 84 Cal. 598, 24 Pac. 386.) "It will be better for you, if you do." (*Redd* v. *State,* 69 Ala. 255.) "You had better tell all you know." (*Rex* v. *Partridge,* 7 Car. & P. 551.) "As a general thing, it is better for a man who is guilty to plead guilty, for he gets the lighter sentence." (*Commonwealth* v. *Curtis,* 97 Mass. 574.) "Had better come out and tell the truth." (By sheriff having him in charge. In answer to question if sheriff had promised him anything for telling truth, defendant said, "No, he just said he would do whatever he could for me.") (*People* v. *Gonzales,* 136 Cal. 666, 69 Pac. 487.)

Mae Toy, the former wife of defendant, was an incompetent witness. (*Coats* v. *Coats,* 160 Cal. 671, 36 L. R. A. (n. s.) 844, 118 Pac. 441; *People* v. *Muillings,* 83 Cal. 138, 17 Am. St. Rep. 223, 23 Pac. 229; *People* v. *Langtree,* 64 Cal. 256, 30 Pac. 813; *People* v. *Warner,* 117 Cal. 637, 49 Pac. 841; *State* v. *Kniffen,* 44 Wash. 485, 120 Am. St. Rep. 1009, 12 Ann. Cas. 113, 87 Pac. 837; *Bassett* v. *United States,* 137 U. S. 497, 34 L. Ed. 762, 11 Sup. Ct. Rep. 165.)

The evidence in this case shows that the room in which the stolen property was located was used by all other members of family and was not within the exclusive possession of defendant at all. (*People* v. *Hurley,* 60 Cal. 74, 44 Am. Rep. 55;

Chamberlayne, Mod. Law of Evidence, sec. 1134; *Sparks* v. *State*, 111 Ga. 830, 35 S. E. 654; note, *State* v. *Drew*, 101 Am. St. Rep. 482.)

Noncompliance with the plain mandate of section 12026, Revised Codes 1921, requiring the jury to ascertain and declare in the verdict the value of the property taken and of that restored, if any: "This provision of the Code, though clearly applicable to the case at bar, was wholly ignored. Its provisions are mandatory and cannot be evaded. Their verdict therefore conferred no authority upon the trial court to enter a judgment or sentence by which plaintiff in error was convicted of felony." (*McCoy* v. *State*, 22 Neb. 418, 35 N. W. 202; *McCormick* v. *State*, 42 Neb. 866, 61 N. W. 99; *Fisher* v. *State*, 52 Neb. 531, 72 N. W. 954; *Holmes* v. *State*, 58 Neb. 297, 78 N. W. 641; *Lee* v. *State*, 103 Neb. 87, 170 N. W. 359; *Doe* v. *State*, 14 Ohio App. 178; *State* v. *Mason*, 62 Mont. 180, 204 Pac. 358; *Thompson* v. *State*, 21 Wyo. 196, 130 Pac. 851; *Merrill* v. *State*, 22 Wyo. 186, 136 Pac. 795.)

*Mr. L. A. Foot*, Attorney General, *Mr. S. R. Foot*, Assistant Attorney General, and *Mr. P. R. Heily*, County Attorney of Stillwater County, for the State, submitted a brief; *Mr. S. R. Foot* argued the cause orally.

The corpus delicti may be proved by facts or information given by accused in an admission or confession, even though the admission or confession may in themselves be inadmissible. (2 Wharton's Criminal Law, sec. 678; 16 C. J. 772, and cases cited in note 31; *People* v. *Harris*, 114 Cal. 575, 46 Pac. 602.)

The corpus delicti may be proved by circumstantial evidence. (*People* v. *Cahill*, 11 Cal. App. 685, 106 Pac. 115; *State* v. *Keeland*, 39 Mont. 506, 104 Pac. 513; *State* v. *Wells*, 33 Mont. 291, 83 Pac. 476; *State* v. *Collins*, 79 Kan. 411, 99 Pac. 817; *People* v. *Mindeman*, 157 Mich. 120, 121 N. W. 488; *State* v. *Court*, 225 Mo. 609, 125 S. W. 451; *Territory* v. *Leslie*, 15 N. M. 240, 106 Pac. 378.)

Furthermore, there is a distinction between the quantum of evidence necessary to justify a conviction and that necessary

to justify the admission of the confessions or admissions of the defendant. (*People* v. *Jones,* 123 Cal. 65, 55 Pac. 698; see, also, *People* v. *Spencer,* 16 Cal. App. 756, 117 Pac. 1039; *People* v. *Rowland,* 12 Cal. App. 6, 106 Pac. 428; see, also, *People* v. *Wing,* 31 Cal. App. 785, 161 Pac. 759; *Groover* v. *Florida,* 82 Fla. 427, 90 South. 473.)

Counsel for appellant complain of the fact that the stolen property was not positively identified. However, under attending circumstances such as in the case at bar this is not required and the proof submitted as to the identity of this property was amply sufficient. (*Gravely* v. *Commonwealth,* 86 Va. 396, 10 S. E. 431; *State* v. *Dale,* 141 Mo. 284, 64 Am. St. Rep. 513, 42 S. W. 722; *State* v. *Babb,* 76 Mo. 501; *People* v. *Wood,* 99 Mich. 620, 58 N. W. 638; *Stewart* v. *State,* 27 Ariz. 240, 232 Pac. 556; *Smith* v. *State,* 89 Tex. Cr. 319, 230 S. W. 410; *Sherman* v. *State,* 83 Tex. Cr. 205, 202 S. W. 93; *Longford* v. *People,* 134 Ill. 444, 25 N. E. 1009; *Rusher* v. *State,* 94 Ga. 363, 47 Am. St. Rep. 175, 21 S. E. 593; *Allen* v. *State,* 8 Ala. App. 228, 62 South. 971.)

The admissions of defendant were properly admitted by the trial court. They were made freely and voluntarily and without involving any fraud or promise. (*State* v. *Sherman,* 35 Mont. 512, 90 Pac. 981; *People* v. *O'Brien,* 53 Cal. App. 754, 200 Pac. 766; *People* v. *Haney,* 46 Cal. App. 317, 189 Pac. 338; *People* v. *Wilkison,* 30 Cal. App. 473, 158 Pac. 1067; *People* v. *Heivner,* 13 Cal. App. 768, 114 Pac. 411; *In re Cannada* v. *State,* 29 Tex. App. 537, 16 S. W. 341; see, also, *Roman* v. *State,* 23 Ariz. 67, 201 Pac. 551; *Minton* v. *State,* 99 Ga. 254, 25 S. E. 626; *State* v. *Bradford,* 155 Mo. 91, 56 S. W. 898; *State* v. *Hopkirk,* 84 Mo. 278.)

The testimony given by Mae Toy was not privileged as a confidential communication between husband and wife. The defendant having been a party to the decree of nullity which recited there never was a marriage and that the ceremony that was had was null and void and of no effect is concluded from now saying that there ever was a marriage. (*State* v. *District Court,* 57 Mont. 517, 9 A. L. R. 1212, 189 Pac. 233.) At any

rate the rule that communications made by one spouse to the other in the confidence of the marital relation are privileged does not exclude testimony as to the fact of a gift by one spouse to the other. (40 Cyc., p. 2355, and note 16 thereunder; *State* v. *Luper* (Or.), 95 Pac. 811; *Adkins* v. *Wright*, 37 Okl. 771, 131 Pac. 686.)

In the case of *Brown* v. *State*, 33 Tex. Cr. 605, 28 S. W. 536, that court held: "On a prosecution for theft, the owner being dead, the fact that he did not consent to the taking may be proved by his acts and declarations." (*Taylor* v. *State*, 44 Tex. Cr. 153, 75 S. W. 35; *Jordan* v. *State*, 51 Tex. Cr. 646, 104 S. W. 900; *Nixon* v. *State*, 89 Neb. 109, 130 N. W. 1049; *Jackson* v. *State* (Okl.), supra; *State* v. *Wong Quong*, 27 Wash. 93, 67 Pac. 355.) On this subject of want of consent by the owner, see, also, *Hines* v. *United States*, 2 Okl. Cr. 639, 103 Pac. 879; *Devore* v. *State* (Okl. Cr.), 243 Pac. 999.)

MR. JUSTICE MYERS delivered the opinion of the court.

The defendant was charged with, tried for and convicted of the crime of burglary in the first degree. It was charged that, in Stillwater county, on or about December 20, 1926, in the night-time, he burglarized a billiard-hall of one M. A. Jacobs, by entering the same with intent to commit therein larceny. The information charged breaking and entering but the statute merely uses the word "enters" and says nothing about breaking. Hence the word "break" in the information is surplusage and need not be considered. The billiard-hall was situate on the second floor of a building in the town of Columbus.

At the time of the alleged burglary and the time of the trial, March 23, 1927, the defendant was nineteen years of age. July 17, 1926, when he was barely nineteen years old, without consent of either parent or a guardian, a marriage ceremony, uniting him in marriage with one Mae Toy, was performed. They lived together a very short time. February 27, 1927, before the trial of defendant, by decree of a court of competent jurisdiction, as result of appropriate action, in-

stituted by this defendant, by and through a guardian, the marriage was annulled and was decreed to be "absolutely null, void and of no force and effect whatsoever." At the trial of defendant, Mae Toy, without his consent and over his objection, was allowed to testify for the state.

In his billiard-hall, Jacobs kept, usually on punch boards, watches, jewelry, pocket-knives, manicure sets, beads and other articles of personal property, which might be obtained by games of chance. He kept, too, some articles for sale. There is evidence to show that in the early hours of December 20, 1926, between 12:15 A. M. and 6:30 A. M., a lot of such articles as were usually kept on the punch boards were taken by some one from the billiard-hall. Some days later, the evidence shows, defendant, while in custody, admitted to officers of the law that he entered the building and took the missing articles and he informed the officers as to where the missing articles were. Acting on that information, the officers obtained a lot of articles that tallied with each and every of the missing articles and were identified as being the same in kind, character, make and description. There is evidence to show that, at the same time, some money was taken from the billiard-hall. No money was recovered.

At the trial of defendant, when the state rested and again at the close of all the evidence, counsel for defendant moved the court to instruct the jury to acquit the defendant. Each time, the motion was overruled. After verdict of guilty, counsel for defendant moved the court to vacate and set aside the verdict. The motion was overruled. When defendant appeared for sentence and pronouncement of judgment, his counsel objected, upon grounds stated, to the imposition of any judgment or pronouncement of sentence. The objection was overruled and judgment was pronounced. Thereafter, defendant, by his counsel, moved for a new trial and the motion was denied. Defendant appealed from the judgment and from the order of the court made in denying a new trial. Counsel for defendant make a large number of assignments of error,

more than a hundred. We shall discuss the assignments in what appears to us to be appropriate order.

It is contended by counsel for defendant that the corpus [1] delicti was not proven, independent of admissions or confessions of defendant. That contention was made one of the grounds upon which was based the motion for a directed verdict in favor of defendant and the adverse ruling of the trial court on that contention is urged as error. That contention has required careful, painstaking reading of the entire record and it has been given.

True, there must be proof of the corpus delicti, independent of admissions or confessions of a defendant. However, there is no law in this state requiring that the corpus delicti in this case had to be proven by direct or positive evidence. "In the absence of any statute to the contrary, it is not necessary that the corpus delicti should be established by direct and positive proof." (16. C. J. 772.) In Montana, only in homicide cases is the corpus delicti required to be established by direct proof. (Sec. 10962, Rev. Codes, 1921.) As to other offenses, there is no such requirement. Hence, as to all other, the corpus delicti may be established by circumstantial evidence. That is settled by prior decisions of this court. (*State* v. *Wells,* 33 Mont. 291, 83 Pac. 476; *State* v. *Keeland,* 39 Mont. 506, 104 Pac. 513.) In this case, no eye-witness testified to the corpus delicti of the charge, i. e., entering the billiard-hall with intent to commit therein larceny, but we hold the circumstantial evidence amply sufficient to establish it.

A witness for the state, one Lewis, an employee of Jacobs, at the billiard-hall, testified that he made sales of merchandise in the place, used the cash register and made change at it; that he was there until about 9 o'clock, the evening of December 19, when he left and left Jacobs there; that at that time there were in the cash register about $47 and in the slot machine about $30 and there were on the punch boards a lot of watches, pocket-knives, manicure sets, beads, fountain pens and other articles.

[80 Mont. 181.]

Another state witness, one Scovill, testified that he was in the billiard-hall, the most of the afternoon of December 19. His testimony showed that he had some familiarity with the place. He testified further that he returned to the place, to make a small purchase, that night, a few minutes after midnight; that, upon that occasion, when he arrived, Jacobs, the proprietor, was the only person in the place; that he remained there until about 12:15 o'clock, A. M., December 20, and no one else came into the place, he and Jacobs being the only persons there; that, at that hour, he and Jacobs left together and, upon leaving, Jacobs closed the door and shook it, to see that it was locked, and they departed, going their respective ways; that, while he was in the place, that night, he noticed the condition of things; noticed punch boards, slot machine and settee; that he saw nothing unusual about the place or the articles of furniture therein or on the floor; that the slot machine was in its usual place, with its back to the wall.

Witness Lewis further testified that he always opened the place, for the purpose of cleaning up, the first thing of mornings; that he went there, for that purpose, at 6:30 o'clock, the morning of December 20, and, at that time, none of the articles that had been on the punch boards at 9 o'clock, the evening before, were there or in the place at all; that he "found everything upside down; drawers were all open, cash register open and the slot machine torn apart and put down on the sofa there and the money all taken out of the box; burnt matches on the floor in front of the cash register and in front of the slot machine; articles all gone; checks and burnt matches on the floor." He said that some of the checks on the floor were checks he had seen in the cash register, the evening before. Lewis notified Jacobs of this condition. Jacobs immediately went to the billiard-hall and called the sheriff, who came to the place. A deputy sheriff also came and a little later another employee of Jacobs came. Jacobs examined, to see what was missing. Jacobs or his help made a list of missing articles and gave it to the officers.

We hold that the foregoing narrated evidence, all brought out, and more, before there was any testimony about admissions or confessions of defendant, establishes the corpus delicti beyond a reasonable doubt. It certainly shows that the place was burglarized. The furniture could not have upset and discommoded itself. The missing articles could not have removed themselves. It was done by somebody. To do it, he had to enter. The fact that larceny was committed proves that the person who entered the place entered for that purpose and with that intent. A person is presumed to intend to do that which he does. This is a situation which speaks for itself. (*Nixon* v. *State*, 89 Neb. 109, 130 N. W. 1049.) The evidence was certainly sufficient to go to the jury.

Counsel for defendant urge there is no evidence of how the entry was made. It makes no difference. The entry might have been made by a pass key or through an unlocked door or a window. It is immaterial, so far as proof of the corpus delicti is concerned. We believe the circumstantial evidence of the corpus delicti in this case stronger than that in *State* v. *Wells*, supra, in which it was held sufficient. We consider it much stronger in this case than in any of the following named cases, in each of which it was held sufficient: *People* v. *Harris*, 114 Cal. 575, 46 Pac. 602; *People* v. *Cahill*, 11 Cal. App. 685, 106 Pac. 115; *State* v. *Collins*, 79 Kan. 411, 99 Pac. 817; *State* v. *Court*, 225 Mo. 609, 125 S. W. 451. We hold the contention of counsel for defendant, in respect to the corpus delicti, without merit.

Counsel assign as error the action of the trial court in permitting, over objection, officers of the law to testify to statements of defendant as to his connection with the crime charged. At the trial, counsel for defendant objected to such testimony chiefly upon two grounds, i. e., that the corpus delicti had not been proven and that the statements were not voluntary but were induced by promises of clemency or threats of consequences. The objection as to the corpus delicti we

have disposed of. We now consider the other ground of objection.

The statements of defendant were made to four officers, as testified to by them; namely, Chief of Police Talgo, Sheriff Bolton, Under-sheriff Searls and Deputy Sheriff Littleton. Talgo was chief of police of Billings, where the defendant was taken into custody. Bolton, Searls and Littleton were officials of Stillwater county, the place of the alleged burglary.

Talgo testified: "He told me that he committed the burglary; I heard him confess to Bolton that he had committed the crime and how he got in; he said he got in through a window"; and testified to some other like unequivocal statements of defendant.

Bolton testified: "He says 'I pulled the job alone'; he wanted to know how much I thought the judge would give him for pulling this job; I told him I didn't have any idea; I says, 'Did you get in through the window?' He says, 'Yes'; he says, 'You didn't find any finger-prints, did you?' I says, 'No, I didn't'; he says, 'I knew blamed well you wouldn't find any, because I used gloves' "; and testified to a lot of other statements of defendant, giving details and informing the sheriff where the missing goods were.

Searls testified: "I asked him if he pulled the job alone; his reply was that he had"; and testified to other statements of defendant, telling where the missing goods were.

Littleton testified: "I said, 'Did you do this alone?' He says, 'Yes.' "

Each of the witnesses testified that at the time of such statements made to each the alleged burglary was the subject of the conversation. The statements were not mere admissions; they were confessions. "A confession, as applied in criminal law, is a statement by a person, made at any time afterwards, that he committed or participated in the commission of a crime." (*State* v. *Guie,* 56 Mont. 485, 186 Pac. 329.) The statements of defendant meet the requirements of the foregoing definition of a confession. Preliminary proof of being voluntary is not

necessary to admission in evidence of an admission of a defendant but is necessary to admission in evidence of a confession. (*State* v. *Stevens,* 60 Mont. 390, 199 Pac. 256.) Therefore, preliminary proof that they were voluntary was necessary, in order to render admissible these statements of defendant.

Counsel for defendant contend that such preliminary proof [2] was not made. Counsel on each side have submitted, on this point, many citations, to support their respective contentions. Perusal of them shows that on the vexed point of admissibility of testimony of confessions there is a great conflict of authority and that almost any kind of judicial decisions desired may be be found in abundance. Running through them all, however, is the pronounced attitude of courts of last resort that each case depends largely upon its own peculiar facts. That declaration has been made by this court. (*State* v. *Sherman,* 35 Mont. 512, 90 Pac. 981.) However wide may be the range of authorities on this point and however great the conflict, the principles of law in that respect, in this state, have been settled by the decisions of this court and it is not necessary to go further than our own decisions, for principles.

To begin with, the question of the admissibility of a confession alleged to have been made by a defendant while in custody is one to be determined in the first instance (*State* **v.** *Kacar,* 74 Mont. 269, 240 Pac. 365) by the court. The court having decided the evidence to be admissible, its finding thereon will not be disturbed on appeal, unless clearly against the weight of the evidence. (*State* v. *Walsh,* 72 Mont. 110, 232 Pac. 194.)

"The only fair test, if such it can be called, is this: Was the [3] inducement held out to the accused such as that there is any fair risk of a false confession? For the object of the rule is not to exclude a confession of the truth but to avoid the possibility of a confession of guilt from one who is in fact innocent." (*State* v. *Sherman,* supra.)

[80 Mont. 181.]

"The purpose of the rule is not to exclude the truth, though it consists of an admission of guilt, but to avoid the possible confession of guilt by one who is, in fact, innocent. The fair test to determine whether a confession is admissible is this: Was the inducement held out to the confessing party such as that there is any fair risk of a false confession?" (*State* v. *Guie*, supra.)

"This rule was not established to protect the guilty against his truthful confession but is designed to guard the innocent against a false confession made under duress, promise of reward of some nature or other inducement." (*State* v. *Stevens*, supra.)

Judged by the foregoing pronouncements of the law, we do not believe any of the statements of defendant were improperly admitted in evidence.

On the day defendant was interviewed by Chief Talgo, he [4] was known to be in Billings. It had been reported to Chief Talgo that defendant was suspected of the burglary and that some of the missing goods had been traced to defendant. Stillwater county officers were in Billings, endeavoring to procure evidence. Chief Talgo sent out an officer, to locate defendant and to have him come to the Chief's office, and defendant came. Chief Talgo testified that defendant's conversation was voluntary; that he, the Chief, used no coercion, threats or intimidation; that he made no promises, practiced no artifice or deception. Talgo, testifying further, said: "I did tell him if a person told the truth, as a rule, he got out of it a whole lot easier than he would by telling a lot of lies; he says, 'What would happen to me if I did tell the truth?' I told him I was in no condition to give him any promises then whatever; then he says, 'Well, I might as well tell the truth.'" Then followed the conversation in which defendant made his statement to the Chief.

Sheriff Bolton, in Billings that day, entered Chief Talgo's office while the defendant, with the Chief, was there and about the time Talgo's interview with the defendant ended.

The sheriff then had some conversation with defendant, as well as some later in the day. The sheriff testified: "I did not make any offer of force or any threat or any intimidation toward him; I did not make him any promise at any time; none whatever relative to the punishment he might receive if he confessed or to the treatment he might be accorded at my hands or in any other fashion; I told him if he would come clean chances are it would be easier with him; didn't tell him it would, though." Defendant's statements to the sheriff were made in part in Chief Talgo's office, in part on the way to Columbus and in part after arrival at Columbus.

Counsel for defendant contend defendant was under arrest when he had his conversations with Talgo and Bolton. When in Chief Talgo's office, he had not been formally arrested but it may be conceded he was in custody, under restraint. At the end of the interviews in the Chief's office, he was locked up and thereafter he was under arrest. Being in custody or even under arrest, though, does not of itself render a confession inadmissible. (16 C. J. 719 and cases cited.)

The statements of defendant to Under-sheriff Searls were made in the sheriff's office at Columbus. The under-sheriff testified that he did not make any threats or promises to defendant.

The statement of defendant to Deputy-sheriff Littleton was made while the latter was taking him to the jail at Columbus. The deputy testified that he did not make to defendant any promise or threats or offer any inducements.

The Montana rule, condensed and succinctly stated, is: "Was the inducement held out to the accused such as that there is any fair risk of a false confession?" (*State* v. *Sherman,* supra.) Thus, it is seen that the rule does not bar all inducements. A confession is not rendered inadmissible simply because an inducement to confess was offered or held out. That is not enough; but, in the language of this court, above quoted, the inducement must be such that there is a "fair risk of a false confession." Whether or not there was is a ques-

tion for the courts to decide. The trial court decided there was not and upon the authority of *State* v. *Walsh,* supra, we are not to disturb that decision, unless it be clearly against the weight of the evidence.

Of all the officers, four in number, to whom confessional statements were made, according to their testimony, only two, Talgo and Bolton, made any remarks, statements or representations whatever that might be considered anything of an inducement. Each of them made one remark to defendant that may be considered something of an inducement to him to confess. Are they such inducements or is either of them such an inducement that there is any fair risk, on account thereof, of a false confession? Is there anything in either of them to induce, upon fair and reasonable grounds of assumption, a false confession?

On that subject, Mr. Wigmore says: "On principle, the advice by any person whatever that it would be better to tell the truth cannot possibly vitiate the confession, since, by hypothesis, the worst that it can invoke is the truth and there is thus no risk of accepting a false confession." (2 Wigmore on Evidence, 2d ed., par. 832.) "The sounder rule is that a confession is not rendered involuntary by advice to the accused that it would be better for him to confess or tell the truth." (1 R. C. L. 555.)

Undoubtedly, the decided trend of decisions in this country and the decided weight of authority, especially modern authority, hold that admonition or advice by officers to tell the truth or that it would be better to tell the truth, if unaccompanied by intimidation, threats or promises, does not vitiate a confession. (*State* v. *White,* 17 Kan. 487; *State* v. *Kornstett,* 62 Kan. 221, 61 Pac. 805; *People* v. *Smith,* 3 How. Pr. (N. Y.) 226; *King* v. *State,* 40 Ala. 314; *Grant* v. *State,* 55 Ala. 201; *Kelly* v. *State,* 72 Ala. 244; *Maull* v. *State,* 95 Ala. 1, 11 South, 218; *Washington* v. *State,* 106 Ala. 58, 17 South. 546; *Huffman* v. *State,* 130 Ala. 89, 30 South. 394; *Hardy* v. *United States,* 3 App. D. C. 35; *State* v. *Staley,* 14

Minn. 105; *State* v. *Patterson,* 73 Mo. 695; *State* v. *Hopkirk,* 84 Mo. 278; *State* v. *Anderson,* 96 Mo. 241, 9 S. W. 636; *State* v. *Bradford,* 155 Mo. 91, 56 S. W. 898; *State* v. *Armstrong,* 167 Mo. 257, 66 S. W. 961; *State* v. *Meekins,* 41 La. Ann. 543, 6 South. 822; *State* v. *Williams,* 129 La. 215, 55 South. 769; *Heldt* v. *State,* 20 Neb. 496, 57 Am. Rep. 835, 30 N. W. 626; *State* v. *Leuth,* 5 Ohio C. C. 94; *Sparf* v. *United States,* 156 U. S. 51, 39 L. Ed. 343, 15 Sup. Ct. Rep. 273 [see, also, Rose's U. S. Notes]; *Cannada* v. *State,* 29 Tex. Cr. App. 537, 16 S. W. 341; *Anderson* v. *State* (Tex. Cr. App.), 54 S. W. 581; *Williams* v. *State* (Tex. Cr. App.), 65 S. W. 1059; *Nicholson* v. *State,* 38 Md. 140; *Hintz* v. *State,* 125 Wis. 405, 104 N. W. 110; *Roszozyniala* v. *State,* 125 Wis. 414, 104 N. W. 113; *Pearsall* v. *Commonwealth,* 29 Ky. Law Rep. 222, 92 S. W. 589; *State* v. *Storms,* 113 Iowa, 385, 86 Am. St. Rep. 380, 85 N. W. 610; *State* v. *Nagle,* 25 R. I. 105, 105 Am. St. Rep. 864, 54 Atl. 1063; *People* v. *Heivner,* 13 Cal. App. 768, 114 Pac. 411; *People* v. *Wilkison,* 30 Cal. App. 473, 158 Pac. 1067; *People* v. *Haney,* 46 Cal. App. 317, 189 Pac. 338; *People* v. *O'Brien,* 53 Cal. App. 754, 200 Pac. 766; *Roman* v. *State,* 23 Ariz. 67, 201 Pac. 551; *Minton* v. *State,* 99 Ga. 254, 25 S. E. 626.)

In *Ammons* v. *State,* 80 Miss. 592, 92 Am. St. Rep. 607, 32 South. 9, as reported in 18 L. R. A. (n. s.) 768, where the editor extensively discusses, in footnotes, the subject of confessions, the editor says: "The prevailing opinion, however, is that telling the accused that it would be better for him to speak the truth does not furnish any inducement, or a sufficient inducement, to render objectionable a confession thereby obtained."

Some of the cases above cited present much stronger language in the way of admonition as inducement to tell the truth than does the case at bar. Citations could be extended almost interminably but it is needless to make more. There are cases to the contrary but they are in the minority and some of them turn on the peculiar facts and circumstances of the

[80 Mont. 181.]

particular case decided and, in instances, wholly different from those of the case at bar.

In many of the cases cited above, defendants were told it would be better to tell the truth or that it would make it easier on them; a positive statement. However, neither Chief Talgo nor Sheriff Bolton made any such positive statement. We cannot see in what either said any promise whatever; any inducement to tell anything that might not be true.

Counsel for defendant cite quite a number of cases in behalf of their contention in this particular. Some of them are easily distinguishable on the facts from the case at bar. In the two Montana cases cited, *Territory* v. *McClin,* 1 Mont. 394, and *Territory* v. *Underwood,* 8 Mont. 131, 19 Pac. 398, the facts are greatly at variance from those of the case at bar and render those cases inapplicable. The four cases which counsel for defendant urge with particular emphasis: *Bram* v. *United States,* 168 U. S. 532, 42 L. Ed. 568, 18 Sup. Ct. Rep. 183 [see, also, Rose's U. S. Notes]; *People* v. *Thompson,* 84 Cal. 598, 24 Pac. 384; *People* v. *Gonzales,* 136 Cal. 666, 69 Pac. 487; *People* v. *Silvers,* 6 Cal. App. 69, 92 Pac. 506; contain some facts and elements quite dissimilar from those of the case at bar.

We think defendant was very fairly treated by the officers. Moreover, we must consider the whole record and the evidence shows that defendant told the officers the whereabouts of all the missing articles and that, upon such information, the officers recovered articles the same in number and description as all of the missing articles and which the jury evidently believed, and, we think, was justified in believing, to be the missing articles. Everything in the case indicates that defendant's confessions were true. We hold that the trial court did not err in admitting them.

Counsel for defendant complain of the action of the trial [5] court in admitting in evidence, as exhibits, the articles recovered by the officers and claimed to be the missing articles and assign it as error. Counsel claim the articles admitted

were not sufficiently identified as the missing articles.  Some of the exhibits were identified positively by a witness or witnesses as articles that had been missing.  Other exhibits were said by witnesses to be precisely similar to missing articles, to look exactly like them, and to be of the same character, kind and manufacture.  The identity of property recently missing and apparently stolen does not have to be positively proven by direct testimony.  (*Gravely* v. *Commonwealth,* 86 Va. 396, 10 S. E. 431; *Allen* v. *State,* 8 Ala. App. 228, 62 South. 971; *Branson* v. *Commonwealth,* 92 Ky. 330, 17 S. W. 1019.)  A great many cases to support this doctrine could be cited.  It is the general holding.  It is competent for a witness, in such a matter, to give his best judgment and belief.  (8 Enc. Ev. 106 and cases cited.)  Here again it is proper to consider the fact that where the missing property could be found was told by defendant and that articles answering the description of the missing articles were there found.  (8 Enc. Ev. 90 and cases cited.)  The evidence of identity was sufficient to go to the jury and the trial court did not err in admitting the exhibits.

Counsel for defendant complain of the ruling of the trial [6] court in permitting Mae Toy to testify, without his consent and over his objection, and assign error thereon.  In that connection, counsel for defendant assign as further error the ruling of the trial court in admitting in evidence, over objection, the judgment-roll of the action brought by defendant, by a guardian, for annulment of his marriage to Mae Toy, wherein is the decree of annulment.  They claim the pleadings contain prejudicial reflection on the defendant in this case.  It was competent to introduce the judgment-roll and the whole of it had to be introduced, to show jurisdiction.  It could not be segregated.

The assignment of error based on the ruling permitting Mae [7] Toy to testify might raise two questions: (1) If the annulment of the marriage between her and defendant rendered it void ab initio; and (2), if not, if she testified to a communication made to her by him during coverture.

Section 10536, Revised Codes, 1921, as amended in Session Acts, 1925, Chapter 83, page 109, so far as necessary to quote, is as follows: ''A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage.''

That section contains a double inhibition. It provides two things, viz.: (1) A husband or wife cannot testify for or against the other, without consent of the other; (2) neither one, during the marriage or after, can testify, without consent of the other, to any communication made by one to the other during the marriage.

Regardless of whether or not the decree of annulment rendered the marriage void ab initio, we take up the question of whether or not Mae Toy testified to a communication made to her by defendant during the time of their marriage or supposed marriage. At the time of the trial, at any rate, they were not husband and wife. Hence, she could testify lawfully against him as to everything but communications between them during their coverture or supposed coverture.

The only testimony of Mae Toy about which any question might be raised as to whether or. not it could be considered the detailing of a communication was her testimony that, at Christmas time of 1926, she received in the mail, at Butte, Montana, her place of residence, some articles, in a box, addressed, in defendant's handwriting, to her, accompanied by a card, inside the box, bearing the words ''May from Bernard.'' In other words, she received from him some Christmas gifts, afterward taken by officers and identified as some of the articles missing from Jacobs' billiard-hall, and with the articles was the card.

Was that testifying to a communication? Clearly the testimony about receipt of the articles was not testimony as to a communication. It was testimony about a gift and a gift is

not a communication. "The rule does not exclude testimony as to * * * a gift by one spouse to the other." (40 Cyc. 2355 and cases cited.) The delivery of a deed by a husband to a wife is not a communication. (*Poulson* v. *Stanley,* 122 Cal. 655, 68 Am. St. Rep. 73, 55 Pac. 605.) The testimony as to the receipt of the articles was clearly competent. The only question remaining is as to the card. The card referred to the articles and merely served to identify them as a gift. If the card, with the wording on it, may be considered a message, any error arising from the admission of it in evidence we hold to be inconsequential and without prejudice. In the first place, the offer and admission in evidence of the card were unnecessary. It was purely cumulative evidence. Defendant had told the officers he sent the articles in question to Mae Toy. [8] His admission had proven it. There is abundant authority that, regardless of whether or not a confession is voluntary and admissible, officers may testify to information imparted by the accused as to where property unlawfully taken may be found. (2 Wigmore on Evidence, 2d ed., par. 858.) That information about these articles was already in possession of the officers and was admissible. Indeed, the confessions of defendant being voluntary and in evidence, how Mae Toy came to be in possession of the articles was already established, regardless of the card. We hold Mae Toy's testimony to be free from material or prejudicial error.

Counsel for defendant assign as error the ruling of the trial [9] court in permitting witnesses for the state to testify to certain things said the morning of the alleged burglary, at the billiard-hall, in the presence of Jacobs, the proprietor, when the alleged burglary was first discovered and reported, claiming it was admission of hearsay evidence. To go into the details of this testimony would lengthen too greatly this opinion. Suffice to say testimony as to the conduct of Jacobs, on that occasion, in hunting for missing articles and making a list of them for the officers, was competent testimony. (*George* v. *United States,* 1 Okl. Cr. 307, 97 Pac. 1052, 100 Pac. 46;

*Hines* v. *United States,* 2 Okl. Cr. 639, 103 Pac. 879; *Devore* v. *State* (Okl. Cr.), 243 Pac. 999.)   Some authorities go further and hold that the declarations of Jacobs on that occasion are competent.   (3 Wigmore on Evidence, 2d ed., par. 1772; 11 Enc. Ev. 1292.)   The rule is liberalized when the victim of some crimes is dead; then, what he said about it at first opportunity to speak is admissible.   (3 Wigmore on Evidence, 2d ed., par. 1725; 4 Enc. Ev. 76; *Brown* v. *State,* 33 Tex. Cr. App. 605, 28 S. W. 536.)   Jacobs died before the trial of defendant.

Nevertheless, the trial court cautioned witnesses to tell only what Jacobs did, in their presence, on that occasion, and not what he said.   However, manifestly it was very difficult to separate words from actions, when contemporaneous.   Witnesses almost necessarily told more or less of Jacobs' utterances but we do not believe such testimony was incompetent, in the main.   If a few things slipped in, inadvertently, which, singled out, might be held inadmissible, upon the state of the whole record we believe the error, if any, not prejudicial.   In one instance, counsel for defendant make a point of "double hearsay" testimony but it is not clear there was any such and the incident alluded to, if error, was, we think, inconsequential and not prejudicial.

Counsel for defendant contend that there is no evidence to [10] show that the taking of the missing articles, if taken, was without the consent of Jacobs.   In that we think counsel mistaken.   Such want of consent may generally be proven by circumstantial evidence (*Nixon* v. *State,* supra; *State* v. *Wong Quong,* 27 Wash. 93, 67 Pac. 355; 8 Enc. Ev. 134), and always when the owner or custodian is dead.   (*Hines* v. *United States,* supra; *Devore* v. *State,* supra; *Taylor* v. *State,* 44 Tex. Cr. App. 153, 75 S. W. 35; *Jackson* v. *State,* 49 Tex. Cr. App. 215, 91 S. W. 788; *Jordan* v. *State,* 51 Tex. Cr. App. 646, 104 S. W. 900.)   We think there is ample evidence to show nonconsent of Jacobs.   Surely he would not have made a list of the missing articles and have given it to the sheriff had the taking been

with his consent; at least the presumption is he would not. (*Nixon* v. *State,* supra.)

Counsel for defendant say there is no evidence of the value [11] of any of the missing articles and make that the subject of assignment of error. It is true there was no such evidence but we consider the assignment without merit. This is not a larceny case; larceny is not the crime charged. The charge is burglary. It is charged that defendant feloniously entered a building, with intent to commit therein larceny. Upon the whole record, the proof shows that defendant did enter the building in question and did take therefrom and carry away and convert to his own use certain articles of personal property belonging to another; it shows an intent to commit larceny. If he did not commit larceny, because the articles taken had no value, that does not obliterate his intent to commit larceny, as shown by the act of taking unlawfully the property of another. However, even were the charge larceny, it would not be necessary to prove, by direct evidence, the value of the property taken and, therefore, was not necessary in this case. When the degree of larceny is not of the essence of a charge (as it is not here), there does not have to be direct and positive evidence of the value of property unlawfully taken; but the property taken, if described and especially if made an exhibit and introduced in evidence, for the inspection of the jury, as in this case, may speak for itself and the jury may decide if it has any value, from its nature and usefulness. (8 Enc. Ev. 140, 141, and cases cited.) It has been so held in this jurisdiction. ''That the property was of some value may be inferred by the jury from the facts and circumstances in the case, even though there be no direct testimony upon the point.'' (*Territory* v. *Pendry,* 9 Mont. 67, 22 Pac. 760, citing authority.) In this case, the property taken and recovered upon information furnished by defendant and received in evidence as exhibits, for the inspection of the jury, consisted of a number of gold watches, fountain pens, lead pencils, salt and pepper shakers, manicure sets, beads, a money bag and

other like articles. It must have been manifest to the jury that they had some value. There is some proof, too, that some money was taken. It is not necessary to make proof of the value of money of the realm, even in larceny cases. (8 Enc. Ev. 141 and cases cited.)

Section 12026, Revised Codes, 1921, is as follows: "When [12] the indictment or information charges an offense against the property of another, by robbery, larceny, burglary, fraud or the like, the jury, on conviction, must ascertain and declare in their verdict the value of the property taken, embezzled or received; and the amount restored, if any, and the value thereof; but their failure to do so does not affect the validity of their verdict."

That was not done in this case and counsel for defendant complain of it and make it the subject of assignment of error. In support thereof, counsel urge *State* v. *Mason,* 62 Mont. 180, 204 Pac. 358. That case, however, in our opinion, is not in point and is not decisive. In the first place, the statute, after reciting the mandate, says of the jury: "But their failure to do so does not affect the validity of their verdict." If that proviso does not mean what it says in plain language, we do not know why it was put there. *State* v. *Mason,* supra, does not say such failure invalidates the verdict or is ground for setting it aside or ground for reversal; it merely holds that, upon such a trial, if the defendant offer proof of the amount restored, of property unlawfully taken, and the value of that restored (which offer defendant made in that case) and the trial court refuse to allow such proof, as it did in that case, the rejection of the offer is reversible error. With that we agree but it is a different thing. There the error was an error in a ruling of the court on admission or rejection of evidence, in the progress of the trial; not a fatal defect in the verdict. The judgment was reversed because of the court's ruling, not because of any defect in the verdict. No such thing occurred in the trial of the case at bar; hence, we must rely on the proviso of the statute. Moreover, in this case, as the record

shows, the property taken was all recovered, except the money, if any money was taken, and proof of the value of money is not required in such cases. If the provisions of section 12026, supra, be to guide the jury in fixing punishment, it was before the jury that all the property taken was recovered, except the money, if any money was taken, and when all is recovered the owner suffers no loss. We hold there is no merit in the assignment.

Counsel for defendant assign as error admission of testimony [13] of defendant having had a pistol and having threatened to shoot himself. That occurred very soon after the commission of the alleged offense and shortly before defendant was apprehended and while officers were working on the affair. It related to recent subsequent conduct of defendant, as showing his state of mind, and was competent. (*State* v. *Lucey,* 24 Mont. 295, 61 Pac. 994; *State* v. *Fisher,* 54 Mont. 211, 169 Pac. 282; *Cordova* v. *State,* 6 Tex. App. 207.)

Counsel for defendant assign as error the ruling of the trial court in refusing to allow officers to testify, on cross-examination, how long defendant had been in jail. Whether or not the ruling was error, the effort to get the information was renewed and the fact was subsequently elicited in evidence and defendant has no ground of complaint in that particular.

Counsel for defendant assign as error many other rulings of the trial court in admitting or excluding evidence. We shall not attempt to review in detail each such assignment. Suffice to say a careful perusal of the record, much of it read several times, fails to show material or prejudicial error in any such ruling. There was a great mass of testimony, interspersed with frequent objections and many arguments; undoubtedly, some immaterial and irrelevant testimony slipped in but we fail to find where any such was prejudicial; likewise, we fail to find where any material and competent evidence offered in behalf of defendant was ruled inadmissible.

Counsel for defendant base many assignments of error on instructions given or refused. However, a painstaking study of all instructions given and of all offered and refused fails to convince us there was any prejudicial error with regard to either.

Counsel complain of the action of the court in instructing [14] the jury that the verdict must be one of guilty of burglary in the first degree or not guilty. There is not a scintilla of evidence that the alleged crime was committed in the daytime. The evidence all goes to show it was committed in the night-time, between sunset and sunrise. Defendant was not prejudiced in that respect.

Counsel complain of the action of the court in refusing to [15] give defendant's offered instruction No. 3, relating to exclusive possession by the accused of stolen goods. We do not think it was applicable. Some of the missing articles were found (upon information imparted by defendant, while in custody) secreted in a closet of a room occupied by defendant and his brother, in their home. However, the evidence indicates plainly that no other member of the family knew of the presence there of any of the articles; they were found by one of the family, with some difficulty, after repeated search and then only upon explicit directions of defendant as to where they could be found. Evidently, they were well secreted by him. We think that constitutes exclusive possession by defendant.

Counsel complain of the action of the court in refusing to [16] give defendant's offered instruction No. 26. According to the great weight of authority, that proposed instruction does not correctly state the law and we so hold. It says that the corpus delicti must be proven independently of any confession by defendant (so far correct) and that the corpus delicti must be so proven beyond a reasonable doubt. The latter statement is not in accord with the general rule of law. True, there must be independent evidence of the corpus delicti but, except in homicide cases, only substantial evidence of it is

required; it is not required that it be proven by independent evidence alone beyond a reasonable doubt. When there is substantial independent evidence of the corpus delicti, prima facie proof, followed by evidence of confession by the accused, the confession may be considered with the independent evidence of the corpus delicti, in deciding whether or not, upon the whole case, the corpus delicti and the commission of the crime by the accused are proven beyond reasonable doubt. An exhaustive examination of authorities shows that to be the law, as held by the great weight of authority. (1 R. C. L. 589; 7 R. C. L. 777; 17 R. C. L. 64; 4 Wigmore on Evidence, 2d ed., par. 2073; *People* v. *Jones,* 123 Cal. 65, 55 Pac. 698; *People* v. *Rowland,* 12 Cal. App. 6, 106 Pac. 428; *People* v. *Spencer,* 16 Cal. App. 756, 117 Pac. 1039; *People* v. *Wing,* 31 Cal. App. 785, 161 Pac. 759; *State* v. *Brinkley,* 55 Or. 134, 105 Pac. 708; *Perry* v. *State,* 155 Ala. 93, 46 South. 470; *Sanders* v. *State,* 167 Ala. 85, 28 L. R. A. (n. s.) 536, 52 South. 417; *Franklin* v. *State,* 3 Ga. App. 342, 59 S. E. 835; *Shires* v. *State,* 2 Okl. Cr. 89, 99 Pac. 1100; *Brown* v. *Commonwealth* (Ky.), 118 S. W. 945; *George* v. *United States,* supra; *Mason* v. *State,* 171 Ind. 78, 16 Ann. Cas. 1212, 85 N. E. 776; *State* v. *Vinton,* 220 Mo. 90, 119 S. W. 370; *Groover* v. *State,* 82 Fla. 427, 26 A. L. R. 375, 90 South. 473; *Cohoe* v. *State,* 82 Neb. 744, 118 N. W. 1088.) Citations might be greatly multiplied. Decisions to the contrary are the exception. In Montana this precise question does not appear to have been passed upon heretofore. The case cited by counsel for defendant, *State* v. *Smith,* 65 Mont. 458, 211 Pac. 208, does not decide that the corpus delicti must be proven by independent evidence beyond a reasonable doubt but only that there must be some independent evidence of the corpus delicti, to "corroborate" (support) a confession. Such is the seeming view of other decisions of this court. (*Territory* v. *McClin,* supra; *Territory* v. *Farrell,* 6 Mont. 12, 9 Pac. 536; *State* v. *Wells,* supra.) Inasmuch as the offered instruction did not correctly state the law, error was not committed by refusal to give it.

We think there is no merit in any of the other assignments, based on instructions, given or refused. Some of those offered by defendant and refused were incorrect statements of law; others, not applicable on the facts; others still were fairly and adequately covered by instructions given. We believe the court fully covered all phases of the case by the instructions given; that the instructions given are correct and warranted by the law and the evidence. Upon the whole, we think the jury was fairly instructed upon the law of the case.

Finally, counsel for defendant complain of the conduct of [17] the trial court, in a number of particulars, and base assignment of error thereon. This was a long trial. There was much colloquy between respective counsel and between counsel and court. Undoubtedly, the trial judge inadvertently let drop some remarks, in making his rulings, that he should not have used. In ruling on an objection to admission of alleged confessions of defendant, objected to upon the ground that the corpus delicti had not been proven, he said, in the presence of the jury: "In this particular case, I think there is evidence sufficient to show that a crime has been committed." Of course that was a comment on the weight of the evidence. The ruling should have been made without such comment or, if the judge wanted to give his reasons, the jury should have been sent out temporarily. Exception was then and there taken to the comment of the judge and he immediately admonished the jury to pay no attention to the remarks of the court. A number of other such incidents occurred, during the course of the trial, but the judge repeatedly admonished the jurors that they should pay no attention to any remarks of the court or to any talk, exchange of words or colloquys of counsel with each other or with the court or to anything counsel might say, save in the argument of the case, and must not let any such things influence them and that they should decide the case solely on the evidence, arguments of counsel and instructions of the court on the law; also that they should not form any

opinion or make up their minds until the case should be finally submitted to them.

The remarks of the judge complained of were all directed to counsel. Counsel for the state cite authority to the effect that only remarks addressed to the jury can be prejudicial; not remarks addressed to counsel. We do not care to indorse that doctrine. A trial judge might address highly improper and prejudicial remarks to counsel, in the presence of the jury, and the mere fact that they were formally addressed to counsel would not keep them from having prejudicial effect on the jury.

Often it is hard for a trial judge, in making rulings, to avoid every semblance of an opinion about weight of evidence or the state of the case but, except in instances of gross impropriety, any danger of prejudice by inadvertent remarks may be removed by cautioning the jury to disregard such remarks. The error, if any, may be cured thus. (*State* v. *Inich,* 55 Mont. 1, 173 Pac. 230; *State* v. *Sawyer,* 71 Mont. 269, 229 Pac. 734.) We hold that any error of the trial judge, in that respect, in the record before us, was so cured. There was certainly plenty of admonition along that line to the jury.

The trial of this case was a hard-fought legal combat. A large number of witnesses were examined and cross-examined; some of them, two or three times; a number, at great length. Nothing was overlooked. Much was brought out that was not necessary. The attorneys on each side showed great zeal. There was almost continual controversy between the attorneys. Nearly everything was objected to. Interruptions were almost continuous. However, we believe the trial judge steered [18] the case through without material or prejudicial error. Some erroneous rulings were doubtless made but such as we so deem we believe were without prejudice to defendant. Error will not be presumed but must be affirmatively shown (*State* v. *Diedtman,* 58 Mont. 13, 190 Pac. 111), and it is firmly established in this state that, in criminal cases, no judgment shall be reversed for technical errors or defects appearing in the record which do not affect the substantial rights of the de-

fendant (*State* v. *Diedtman,* supra); and further that, when the whole record is sufficient to establish the guilt of the defendant, even though there was error, a new trial will not be granted unless it clearly appears that the error complained of actually prejudiced the defendant in his right to a fair trial. (*State* v. *Stevens,* supra.)　The statutes of Montana so direct. (Secs. 11853, 11870, 12125, Rev. Codes, 1921.)

If the verdict in this case be justified by the evidence, as we hold it is, the defendant is to be commended that he did not make worse the wrongdoing of which he was convicted by committing perjury by any word, act or implication.　He did not take the witness-stand.　When arraigned he would not even plead not guilty but stood mute and the court entered a plea of not guilty for him.　His conduct virtually said it devolves upon the state to prove the charge.　That was his privilege and it was a far better course, if guilty, than to commit himself to perjury by word, act or attitude.　He was ably defended and we believe was protected in all his rights and the law must take its course.

The record in this case is voluminous and is not what it [19] should be and it added greatly to the labor of deciding the case.　It was sent up, by virtue of section 12045, Revised Codes 1921, and was undertaken to be prepared according to the provisions of section 9402, Revised Codes 1921.　Nevertheless, it contains an immense amount of irrelevant matter, wholly unnecessary to a decision of the case.　It contains all the evidence, literally, by question and answer, and, in addition, contains every word uttered by anybody in the courtroom, during the trial; contains every colloquy of counsel with each other or with the court; long arguments of counsel; lengthy statements by the judge; every admonition of court to jury at every recess; and directions of the court to veniremen not serving on the case as to when to report for duty; side remarks of witnesses, jurors sometimes joining in; everything.　It is as though a dictagraph had been installed in the courtroom.　It made our labors very tedious.　Neverthe-

less, we have given every phase of the case careful attention and laborious study. A record should not be so encumbered. It is contrary to the rules of this court. A trial judge should require the elimination of all useless and irrelevant matter, before certifying to the record.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.